## HEIRS OF CATHARINE SHARP *v.* ANDREW KLIENPETER.

The words "lawful heirs," in a will, refer to heirs of the half as well as of the whole blood, and evidence cannot be received to show that testatrix only meant a portion of her heirs at law. The admission of such evidence would virtually defeat the prohibition to make verbal testaments.

An executor, who is the debtor of the succession on account of the purchase of productive property from the testator, owes legal interest on the installments from their maturity. But his failure to pay the debt, which he owes, does not subject him to the penalties of the law for not keeping the funds of the succession in a bank.

APPEAL from the late Probate Court, now Sixth Judicial District Court, parish of East Baton Rouge, *Burk*, J. *Cyrus Ratliff*, for plaintiffs, cited : Bullard and Curry's Digest, p. 2, 3, Act of 13th of March, 1837. 2 Ann. 400. 4 Ann. 29, 30 ; and the case of the *Succession of Salvador Christy*, 6 Ann. 427, the last case on this point reported, where the court say, the act of 13th March, 1837, requiring syndics, executors, curators, &c., to deposit funds in their hands in one of the banks allowing interest on deposits, is not unconstitutional; and such fiduciaries are not excused from the penalty imposed by the law, upon the grounds that there were no banks which paid interest on deposits. If this case does not bear us out in our motion, then I yield the point.

Heirs of<br>Sharp<br><em>v.</em><br>Kleinpeter.

We will not trouble the court with any argument to refute the position taken by the counsel for the executor, that *Mrs. Smith* labored under an error of law in making her will; that she believed that her lawful heirs were her sisters and brothers of the full blood. The words lawful heirs is a plain and unambiguous expression, and cannot be departed from. C. C. 882, 884, 885. 6 Ann. 232. See, as to the interpretation of acts of last will, C. C. 1705. But the will must stand as it is, or be set aside. If set aside, so much the better for the legal heirs.

*J. M. Elam*, for defendant. As to the plaintiffs' complaint, whether heirs of the full blood are entitled to three-fourths or two-thirds of the estate. Art. C. C. 909, requires that: "If they are of different marriages, the succession is equally divided between the paternal and maternal lines of the deceased; the german brothers and sisters take part in the two lines, the paternal and maternal brothers and sisters each in their respective lines only."

We have viewed this question as if the article 909 established clearly in such a case as this, the right of the half blood to inherit. By the Old Code this right was denied. In effecting this innovation in the New Code, article 909, the jurist, in a note appended to the project, remarks : "The 38th article of our code makes the german brothers and sisters of the deceased, inherit the whole of his succession to the exclusion of paternal or maternal brothers and sisters, which appears to us unjust; for the paternal and maternal brothers and sisters, though not so intimately connected with the deceased as his german brothers and sisters, are no less his brothers and sisters, and ought to have some part of his succession."

The 40th article of the code, in the case in which the deceased has left no german brothers and sisters, but only paternal or maternal brothers or sisters, has established a complicated mode of partition, which is found in Law 586 of the Partida, tit. 13, and in the Febrero Real, book 3, tit. 6, Law 13, which presents great difficulty.

We have thought the mode which we propose, which is taken from art. 752 of the French Code, is more simple, and grants every thing which is required by the double tie which unites german brothers and sisters, without sacrificing the rights of the paternal brothers and sisters in the article mentioned.

There appears to be in art. 909, C. C. and art. 752, French Code, a qualified exception to the disposition of such an estate, in these words: "If there are brothers and sisters on one side only, they succeed to the whole, to the exclusion of all the other relations of the other line."

German brothers and sisters may have both paternal and maternal brothers and sisters of the half blood : as for example, when a widower, with children, marries a widow with children, the issue of their marriage would be bound as by a "double tie" to the half blood by the paternal and maternal line, although the children of the two lines respectively, are strangers in blood. It seems to us that it is only in such a case, that german brothers and sisters are required to divide an inheritance; but, in a case like that at bar, where there are sisters on one side only, they should succeed to the whole estate to the exclusion of all the other relations of the other line. It is evident the article intended to exclude some one under certain circumstances, and we frankly confess our inability to discover who was intended to be excluded, unless it be in a case where the "double tie" did not exist, but only in a case where the half blood existed in one line only.

If, under article 909, the half blood be entitled to any part of the inheritance, the judgment of the district court did them ample justice.

The demand of those claiming to be heirs of the half blood should be rejected. This depends on the construction to be given to the intention of the testatrix, as her oft-expressed wish, shown by the answers of the executor to interrogatories propounded to him, and the testimony of *James C. Dawson* and *John B. Klienpeter*, taken on the trial. In fine, whether the right claimed by the half blood does not grow out of an error of law, operating on the mind of the testatrix, when in her will she said : "It is my will, that the balance of my property, both real and personal, and debts due to me, shall be equally divided between my lawful heirs."

Who did the testatrix consider were her lawful heirs?

By the Code of 1808, the half blood was not lawful heirs, *ab intestato*, in case there were german brothers and sisters. This rule of inheritance being known

HEIRS OF SHARP *v.* KLEINPETER.

to the ancient population, a change by the Code of 1825 is still unknown to many of them, as it doubtless was with the testatrix, at the date of her will and her death.

But the question occurs, can the heirs of the full blood plead an error of law resting on the mind of the testatrix when her will was dictated, as to those who were her "lawful heirs?"

The jurist who revised and projected the Code of 1825, which gave the half blood a right to inherit, also incorporated in the code, tit. 4, c. 2, sec. 1, par. 7, article 1840, Errors of Law.

In a note appended by the jurist who revised and recommended for adoption the Code of 1825, it is said: "As there has been much diversity of opinion, and many contradictory decisions on the effect which errors in law ought to have upon contracts, we have thought it proper to offer some positive enactments on the subject. Neither the Napoleon Code, nor that in force in this State, have any article on that subject *eo nomine*, but we think there are some in both codes which show a decided intent that such errors, as well as errors in fact, should invalidate contracts. The article 1109, which is copied verbatim in our Code, (art. 9, title obligations,) declares, "that is no valid contract which is given through error," without making any distinction between error in law and error in fact. Art. 2052 Napoleon Code, and art. 10, title Transaction (Compromise) in our Digest, both provide that a compromise shall not be attacked for an error in law. Now, there being no such objection in any other contract, it is fair to conclude that the general expression of the article 9 would have given rise to a rescision of all contracts, including those of compromise, or there would have been no reason for the special restriction.

The reason of allowing a rescision for errors of law, appears to us equally evident in both cases. Our code, and that of most other nations, has established, that when an obligation is entered into without a cause, or with a false or unlawful cause, it is void. Art. 31, tit. Obligation. If, therefore, an opinion of my right is the sole cause of my agreement, and that opinion is false, there is then no cause, no more than there would be if the error bore on the substantial fact, which was the cause of the contract, and of course the contract is void. Our opinion on this subject is supported by D'Aguesseau in his treatise on the subject, Pothier in his Pandects, vol. 1, p. 645, Domat, law 1, tit. 18, No. 14, Vennius, Huberus and other celebrated civilians, and by several learned writers in the English law. The maxim that all are presumed to know the law, we apprehend, applies principally to duties, not to contracts. But a few of the 3522 articles of our code are enactments of positive law. The capacities and incapacities of persons being defined, declaring what acts may or may not be contrary to good morals and public order, persons are left free to make their agreements, legally entered into, to have the effect of laws. The code is principally illustrative of principles which should be implied in every contract, influenced by the perpetual disposition to render every man his due.

By the court:

ROST, J. This is a suit by the heirs of *Mary B. Sharpe,* some of whom are descendants of brothers and sisters of the whole blood, and others are descendants of brothers and sisters of the half blood of the deceased, against her executor, to compel him to account for, and distribute among them, the funds in his hands.

The executor rendered his account, showing a balance of $15,760 86 in favor of the succession, after paying the debts and particular legacies. He averred, at the same time, that he was one of the heirs of the whole blood, and denied the right of the descendants of the brothers and sisters of the half blood to inherit any portion of the succession.

The district judge homologated the account of the executor, and ordered him to pay three-fourths of the amount in his hands, to the heirs of the whole blood, and the other fourth to the heirs of the half blood. He allowed legal interest on that balance, from the judicial demand, instead of the interest of 20 per cent claimed by the plaintiffs, on the ground that the executor failed to deposit the funds of the succession in bank, as required by the act of 1837.

The plaintiffs have all appealed, and the executor has asked that the judgment be amended, so as to reject the demand of the heirs of the half blood, and the allowance against him of legal interest.

As all the heirs of the whole blood, except the defendant, have joined in the same suit with the heirs of the half blood to claim the succession as heirs at law, and have set up no claim under the will of *Mary B. Sharpe*, the district judge properly ordered the distribution between both classes of heirs to be made in conformity with article 909 of the code, and the executor has no capacity to contest, in behalf of the heirs of the whole blood, claims which they have judicially admitted.

The executor being himself an heir both at law and under the will, had undoubtedly the right to claim, as testamentary heir, and to contest the rights of any of the plaintiffs as heirs at law; but he has not done so, he simply alleges that he is one of the heirs of the full blood, and denies that the heirs of the half blood are entitled to inherit any portion of the succession; the will is no where mentioned by him, and his rights, as heir at law, being fully recognized by the judgment, he has no cause of complaint.

The question, who the testatrix meant by her lawful heirs, when she ordered her property to be equally divided between them, does not occur, and if it did the result would certainly not be favorable to the appellee. The words lawful heirs are free from ambiguity, and no evidence was admissible to prove that she only meant a portion of her heirs at law; that evidence would virtually defeat the prohibition to make verbal testaments.

The executor having purchased property from the deceased, and being a debtor of the succession for the price of it, to the entire amount remaining in his hands when the motion to produce his bank book was made, we think that the Act of 1837 is not applicable to him, but the property which he purchased being productive, we are of opinion that he should have been charged with legal interest from the maturity of the different installments of his debt.

The plaintiffs object to the charge of $1500 made by the executor, for a like sum paid by the testatrix to *D. Smith*, in April, 1839; he was the agent of the testatrix, and had the sole management of the plantation which he purchased rom her shortly after; he has charged himself, in his account, with the proceeds f the cotton crop of 1838, and, as it may be fairly inferred from the evidence 1at she had no other means besides the crop to pay that sum, we cannot say, 1at the district judge erred in deducting it from the proceeds of the crop.

The allowance of interest from the maturity of the installments, and the 1glect of counsel to submit a decree, showing the share of each of the parties by represent, after deducting the amounts they have received, makes it 1essary to reverse the judgment and to remand the case. That interest will irease the balance against the executor in his account from $15,760 to $,528 40, to be distributed as follows: three-fourths to the heirs of the whole bld, and one-fourth to the heirs of the half blood.

is therefore ordered, that the judgment be reversed. It is further ordered, th the executor distribute among the heirs of the half blood, the sum of $52 12. It is further ordered, that he account to the heirs of the whole blo, for sixteen thousand one hundred and forty seven dollars thirty-six cents, decting from their respective shares the amount paid each of them, with legal intst from the date of payment to this day. It is further ordered, that the accat of the executor, as amended, be approved and homologated, and the

HEIRS OF
SHARP
*v.*
KLEINPETER.

case remanded for a partition among the heirs, in conformity with this decree, and with directions to the district judge to allow legal interest from this date upon half of the amounts coming to them on the final partition. It is further ordered, that the costs of this appeal be paid by *Andrew Kleinpeter* personally.